**PERRY et al. v. RIPLEY et al.** (No. 9619.)

(Court of Civil Appeals of Texas. Dallas. Feb. 13, 1926.)

**1. Appeal and error ⊜⟞564(5).**

Motion to file statement of facts after time required by law will be refused, in absence of reasonable excuse for failure to file within time required.

**2. Appeal and error ⊜⟞544(1).**

In absence of statement of facts, Court of Civil Appeals can consider only fundamental error.

**3. Hospitals ⊜⟞1—In absence of abuse of discretion on part of local health officer in indorsing application for license to operate maternity home, or of state board of health in granting application, licensee, to enjoy privilege, need only conduct home according to law (Acts 37th Leg. [1921] c. 76 [Rev. St. 1925, art. 4442]).**

Unless there was abuse of discretion on part of local health officer in indorsing application for license to operate a maternity home, under Acts 37th Leg. (1921) c. 76 (Rev. St. 1925, art. 4442), or on part of state board of health in granting application, licensee, to enjoy privilege accorded by such license, need only comply with provisions of law directing manner in which home shall be conducted.

**4. Hospitals ⊜⟞1—Allegations in bill to enjoin operation of maternity home held insufficient to show violation of law regulating manner in which home shall be conducted (Acts 37th Leg. [1921] c. 76 [Rev. St. 1925, art. 4442]).**

Allegations in bill to enjoin operation of maternity home *held* insufficient to show violation on part of licensees of Acts 37th Leg. (1921) c. 76 (Rev. St. 1925, art. 4442), regulating manner in which such place shall be conducted.

**5. Nuisance ⊜⟞6.**

Maternity home existing under and conducted in conformity with legislative will of state is not nuisance.

**6. Hospitals ⊜⟞1—Law, authorizing maternity homes, gives adequate remedy at law for violation of any of its provisions to which resort should be had before seeking equitable relief (Acts 37th Leg. [1921] c. 76 [Rev. St. 1925, art. 4442]).**

Acts 37th Leg. (1921) c. 76 (Rev. St. 1925, art. 4442), authorizing maternity homes, provides adequate remedy at law for a violation of any of its provisions to which resort should be had before seeking equitable relief against maintenance of such a home by injunction.

**7. Hospitals ⊜⟞1—Allegations in bill to enjoin operation of maternity home, based on general aspect surrounding home and plaintiffs' anticipation of what would be result of operation, are not allegations of positive facts as will furnish grounds for injunctive relief.**

Allegations in bill to enjoin operation of maternity home, based on general aspect surrounding home and plaintiffs' anticipation of what will be result of operation, are not allega-

tions of positive facts, and can furnish no ground for injunctive relief.

**8. Injunction ⊜⟞12.**

Ordinary writ of injunction is not available for threatened injuries which are purely conjectural.

**9. Nuisance ⊜⟞23(1).**

Equity can interfere to prevent pending threatened injury which would be nuisance for which there is no remedy at law.

**10. Nuisance ⊜⟞3(8).**

Maintenance of maternity home cannot be restrained, in absence of showing that, conducted in lawful manner, it would be a nuisance.

**11. Nuisance ⊜⟞4—Operation of maternity home will not be enjoined because adjoining landowners apprehend it might become nuisance by being conducted in violation of law.**

Injunction against maintenance of maternity home should not be granted because adjoining property owners apprehend that it might become a nuisance through conduct of home in violation of law; presumption being that home will be conducted in accordance with law.

**12. Hospitals ⊜⟞1—Allegations to effect that maternity home will be operated in violation of law held insufficient grounds for equitable relief.**

Allegations of bill to enjoin operation of maternity home to effect that adjoining landowners apprehend that place will be conducted in unlawful manner *held* insufficient grounds for equitable relief.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Bill by J. B. Ripley and others against Mrs. Lillian Perry and another. From an order refusing to dissolve a temporary writ of injunction, defendants appeal. Reversed and remanded.

Claude C. Westerfeld, of Dallas, for appellants.

E. B. Muse, of Dallas, for appellees.

VAUGHAN, J. [1, 2] This is an appeal from an order of date May 2, 1925, refusing to dissolve the temporary writ of injunction granted on the application of appellees, J. B. Ripley, J. S. Eads, R. A. Clanton, Simpson Payne, Sam Bailey, S. H. Orman, C. M. Ragon, C. D. Kane, Sidney Goddard, Fannie E. Ford, W. H. Reeves, J. G. Mead, C. W. Howard, R. F. Adam, R. S. Craig, C. L. Wortham, C. L. Hawkins, A. E. Wilbur, W. W. Dean, F. L. Lindsey, W. H. Kelly, Geo. E. Price, Mrs. J. T. Ashford, Mrs. M. J. Lowe, Mrs. Lon Rowley, Mrs. F. Tosch, and O. C. Lund, restraining appellants, Mrs. Lillian Perry and Miss Lillian Hannah from keeping, establishing, running, maintaining, and operating a maternity home situated on part of lot 15 and all of lot 16, and 25 feet off the south side of lot 17 in block 15 of Beverly Hills, an addition to the city of Dal-

⊜⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

las. This appeal is before us without a statement of facts. Appellants' motion to be permitted to file statement of facts tendered was refused because same was not presented to the clerk of this court to be filed as a statement of facts within the time required by law; appellants, in support of said motion, not having shown a sufficient reasonable excuse for such failure. Therefore we can only consider fundamental error, to wit, material error apparent upon the face of the pleadings. Does such exist? In answering this question we are confined to the issue of law presented by the ruling of the court on the general demurrer urged to the bill upon which the temporary writ of injunction was granted. Viewed in their strongest light, the effect of the allegations may be summed up as follows:

Appellants were operating, and intended to continue to operate, a maternity home on lots 15, 16, and 17 of block 15, Beverly Hills, an addition to the county of Dallas, situated about two or three miles from the city limits on the Dallas and Fort Worth interurban, located about two blocks from said railway in a sparsely settled new addition and almost across the road from the old Armstrong sanitarium, being on a plot of ground 107 by 205 feet. According to the allegations, it does not appear that any homes are within a reasonable distance of said maternity home. However, it is alleged:

"That some of the appellees have purchased property in the vicinity of said home and expect to build residences thereon which they intend to occupy as homes, and that the operation of said maternity home would cause irreparable loss, not only in the land values and rentals, but a serious moral detriment to their aspirations for the honor and integrity of their children; that the establishment of said alleged maternity home and hospital for fallen girls is an eyesore, cancer to the bud of their aspirations and hopes, and that said institution is a festering sore, an incurable cancer and common nuisance; that one of the appellees purchased some lots 12 years ago and some day intended it as a home for her children, and the object of every other home owner as well as said appellee has been marred and destroyed; that the establishment has been and will be the mecca to which will journey poor unfortunate girls from Oklahoma, Arkansas, and Louisiana; and that it will be the clearing house of the vices of men and the sins and weaknesses of women, and will also be a ready receptacle for vicious medical practitioners who ply their wicked and nefarious art to the disgrace of the medical profession, by which they are not recognized, and who ofttimes ply their criminal practices in the city of Dallas, using this as the dumping ground and a place of concealment of their wickedness and sin and weakness of others."

Appellees further allege, in effect, that to permit this alleged maternity home and hospital for weak and fallen girls to continue will absolutely destroy the harmony of the home, the beauty and symmetry of the lives of these home dwellers, will mar the lives of their wives and children and be a stench in the nostrils of decency, of high morals, and of good order, and that—

"These defendants have run and established and are now running an establishment, and are threatening to run this unlawful institution for the very purpose in the place selected of keeping under cover their wicked and illicit doings; that the inmates of said establishment are permitted, and will be permitted, to roam about the community invading the homes of the citizens thereof under various pretenses, creating a moral miasma to the detriment of the moral fibre of the children of this community, and all of its home owners and home dwellers; that these unfortunate creatures, the prey of vice and weakness, have been brought into this establishment, and will be brought into this establishment, in the daytime, but more often at night, in ambulances and other closed motor vehicles, some of these unfortunate creatures sobbing aloud, crying and screaming in their desolation and misery, such has been the case and these plaintiffs allege such will be the case in the future; these plaintiffs allege that neither of defendants, or any of their agents or helpers, are either graduate nurses, trained nurses, or licensed nurses, and they have no right, morally or otherwise, to operate for or upon any one or nurse any one, either in the city of Dallas or Dallas county, for charge or hire, and these plaintiffs charge that they have so charged and acted as nurses for hire, and they charge they contemplate again so operating, and are threatening to operate and act as nurses in this institution as they have done in the past, and as they are now doing, and will continue to do in this present institution in the future, reaping a sinful and a reeking sin-stained remuneration from poor unfortunates who fall into their hands, victims of misplaced confidence, fraud, and deceit. * * *

"These plaintiffs show to the court that their community has been thrown into turmoil and unhappiness by the establishment of this alleged maternity home and hospital for fallen girls; that their pursuit of happiness has been interfered with, their homes overshadowed by the ill consequences that will inevitably flow from the continued running of this institution; that their constitutional rights of living their lives in the full enjoyment of their homes has been interfered with, their property rights have been impaired; that an irreparable injury has been done each and every one of them. * * *"

Appellees prayed for a temporary injunction restraining the appellants from further operating the maternity home; that the temporary injunction so granted on final hearing be perpetuated, etc. The court granted the temporary writ as prayed for, and, on the 18th day of April, 1925, appellants duly filed their answer and motion to dissolve. The hearing of the motion to dissolve was had on the 2d day of May, 1925, and resulted in the order appealed from.

Of the many exceptions and pleas to the merits contained in the answer presented at this hearing, we will, for the reasons above stated, consider only the general demurrer.

The court overruled the general demurrer, to which order appellants duly excepted. While it is not alleged by appellees that appellants are operating, had operated and intended to operate the maternity home under article 4442, Revised Civil Statutes, 1925 (Acts 1921, p. 146), yet we are to assume, from the fact that it is not alleged, that appellants had operated, were operating, and intended to operate said maternity home as alleged by appellees, unlawfully and without authority of law, that appellees' petition for equitable relief is based upon the proposition that, notwithstanding appellants are now, have been, and will continue to operate the maternity home as charged by appellees under and by virtue of the authority conferred upon them by said statute, yet the manner in which they are conducting said home is a nuisance, and therefore should be abated. This, because appellants, under the law, would not have any standing in court in so far as having the right to own, keep, conduct, or manage a maternity home or other place for the reception, care, and treatment of pregnant women and charging a fee or receiving or accepting compensation in the way of room rent or board, without first having complied with the plain mandatory terms of said statute governing such an institution; for, without having complied with this statute, the legal right to conduct such an institution would not exist, and the conducting of such an institution without complying with said statute could be prohibited by proper proceedings on the ground that the existence and operation of such institution was not authorized, the law providing therefor not having been complied with, to wit, had not obtained an annual license from the state board of health on due application made to said board. Section 1 of article 4442, supra, requires:

That an application for such license "shall state the name and address of the licensee, the specific location of the building used, and the number of inmates which may be boarded there at one time, and shall be approved by the local health officer."

The act within its own terms furnishes a remedy for the violation of any of its provisions that are required to be kept and observed by the licensee, as is clear from section 4 thereof, to wit:

"Whenever a keeper, manager or owner of any such institution as is defined in this article shall be convicted of keeping or conducting a 'disorderly house', as that term is defined in the Penal Code, the state board of health shall forthwith revoke the license issued authorizing the keeping of such house; and should any such manager, keeper or owner refuse to permit any person authorized by this article to inspect such house at any reasonable hour, or should they fail to make such reports to the local health officer within the time and in the manner required by this article, then said state board of health may suspend said license for any period

of time not to exceed six months. Upon any subsequent failure to permit such visits of inspection or to make said reports, said state board of health is authorized to revoke the license for the conducting of such house."

Section 2 of said act requires said board of health, on issuing the license as applied for, to notify the local health officer of the county in which said institution is to be located of the granting and terms of the license so issued, and requires the local health officer to keep informed as to the nature and reputation of every such institution in his jurisdiction, requiring him to visit and inspect same from time to time, and requires that the licensee, for such purpose, shall at all reasonable hours accord such officer free and unrestrained access to such institution.

By section 3 of said article the licensee is required to report to the local health officer, within 24 hours next after it occurs, the birth of any child, including stillborn or prematurely born children, at such institution, the arrival of any child, stating the name, sex, age, color, and from whom received, and the report, likewise, of the removal of any child, stating its name, age, and disposition made of same. Thus it will be seen that the act, with great care, provides for the orderly manner in which such institution must be conducted, having regard for the best interest of society, as well as that of the individual committed to the care of such institution. The local health officer is required to make such visits thereto at any and all times that in his judgment may be necessary to keep advised of the proceedings, as well as the conduct of such institution, and to make reports thereof to the state board of health. For a failure to comply with any of the provisions enjoined upon the licensee to be observed, a speedy and effective remedy is provided whereby the institution will be closed by the state board of health revoking the license issued authorizing the keeping of such house. Therefore it is apparent that, if there should be any laxity in the supervision under which such institution is to be conducted, the fault will not rest with the law, but with the citizenship directly interested in the enforcement of same.

[3] It is not alleged in the bill that the local health officer abused his discretion in approving appellants' application for license authorizing the establishment and maintenance of the institution, or that, in approving the application for license to keep, conduct, or manage the institution, the state board of health abused its discretion. Under the law it is made the duty of these public officials, not only to see that the requirements of its provisions in reference to the issuance of license and the selection of the place of location for the home are complied with, but that in the management and conduct of the home same shall conform to the provisions of the law applicable thereto, and, the license

having been properly applied for and obtained, the right to conduct the business is only secured to the licensee during the term for which the license may be issued, conditioned upon an observance of the rules and regulations governing the manner in which such institution shall be conducted. Therefore, unless there was such an abuse of discretion alleged and established, either on the part of the local health officer in indorsing the application or on the part of the state board of health in granting the application for the license that would justify a court of equity to enjoin the rights accorded by the license thus obtained, then, in order for the licensee to be secure in the enjoyment of the privileges accorded by such license, it is only necessary that in the conduct of the home thus licensed the provisions of the law directing the manner in which same shall be conducted be complied with.

[4] Assuming that all of the material allegations found in the bill were duly established, yet same would not be sufficient to show a violation on the part of appellants of the provisions of the law regulating the manner in which said maternity home shall be conducted, for same do not amount to a charge that a greater number of inmates had been housed at one time in the maternity building than is authorized by the license, or that a pregnant woman or infant was kept in a building or place not designated in the license, or that appellants failed to report to the local health officer the birth of any child, or the arrival of any child, and the removal of any child, and disposition made of it, from said maternity home, as provided by section 3 of said article 4442, supra, or that appellants, or either of them, had been convicted of conducting a disorderly house or had refused to permit any person authorized by the provisions of said article to inspect such house at any reasonable hour, or had failed to make the reports required by the provisions of said article to the local health officer within the time and in the manner required by law.

From the following, found in the conclusions of the trial court, to wit:

"The question in this case is whether the operation of this maternity home in the location where it is and surrounded as it is has created, and does create, a nuisance. As so located, the court holds that it does. The court is not sustaining the injunction as to the conduct of a hospital, as such, nor as to the property being the home of these defendants, and it will be understood that the court is not interfering with the business of a place run purely as a hospital. The court is simply restraining the operation of a maternity home, where it may be construed as immoral to assemble these girls from here and abroad to deliver illegitimate children on the record as in this case,"

—we are justified in assuming that the trial judge was induced to refuse to dissolve the temporary writ of injunction by the fact that a maternity home as conducted by appellants, in a neighborhood where women and children resided, was a nuisance per se. The granting of the temporary injunction, as well as the refusal to dissolve same, was not upon the ground that because of the manner and way in which the maternity home had been and was being conducted constituted a nuisance, but because it had been, and was being, conducted in a locality where women and children reside; therefore its operation was to be construed as immoral, thereby becoming a nuisance.

[5, 6] The right to maintain a maternity home being authorized by the Legislature, as well as the manner in which it should be managed and conducted prescribed thereby, can it be said that an institution so existing under and conducted in conformity with the legislative will of the state is a nuisance, the law not invading any of the inviolable rights of the appellees as secured to them by the Constitution, federal or state? We think not. The maternity act within its own terms gives a full and adequate remedy at law, which appellees should have first resorted to before seeking equitable relief. Duck v. Peeler, 11 S. W. 1111, 74 Tex. 268; 1 High on Injunction, pars. 28, 29. The petition on which the writ was granted fails to show that the appellees had been denied the benefit of that remedy. It does not even show that they tried to exercise their legal rights secured to them by the plain provisions of the act. If the legal remedy available to appellees is inadequate, then they had the right to invoke the equitable relief through injunction. Melton v. American Surety Co. (Tex. Civ. App.) 240 S. W. 574. However, it cannot be said that the legal remedy available to appellees is either inadequate in its operation or difficult in its application. A knowledge of the terms and provisions of the act (article 4442, supra) is sufficient authority in support of this conclusion.

We have failed to find that it would be unduly burdensome to apply the remedy furnished by the act against a licensee for failure to conform to the provisions of the act regulating the conduct of such an institution. There is nothing difficult about resorting to the remedy. The Legislature provided a remedy to protect society generally, and especially those who, on account of their proximity to the home, are most interested in the due and orderly conduct of same. The appellees nowhere allege that said remedy is insufficient in law, or that they ever endeavored to have appellants' license canceled, or ever made any complaint to the state board of health on account of the failure of appellants to observe the law in the conduct of said home.

[7, 8] Although appellees' petition includes many allegations based upon what happened at the place formerly conducted by Dr. Arm-

strong, across the county road from the place conducted by appellants, and which it is alleged will necessarily happen at the place conducted by appellants as a maternity home, and allegations as to what appellees anticipate will be the result of the operation and the general aspect surrounding the maternity home conducted by appellants, yet same are not in any respect allegations of positive facts that have or were about to take place. Therefore same can furnish no ground for the relief sought, coming within the rule announced in the·case of Lutcher v. Norsworthy (Tex. Civ. App.) 27 S. W. 630, to wit, it seems plain that the threatened injuries of which appellees complain, as stated in their amended petition, are purely conjectural, and, for injuries of that character, the ordinary writ of injunction is not available.

[9-11] Appellees do not seek an injunction to restrain an actually existing nuisance, but to restrain an intended act on the ground that the same may become a nuisance for which an injunction under the recognized rules of equity procedure will not lie. Where it is made to appear that the doing of an act will necessarily be a nuisance for which there is no remedy at law, a court of equity is authorized to interfere to prevent the pending threatened injury. However, the mere fact that appellees alleged facts that indicated that probably future annoyance or injury might result from the conduct of the maternity home, same not being a nuisance per se, does not furnish grounds for the relief sought; especially so where the anticipated injury or annoyance rests in doubtfulness or uncertainty. Therefore. the maintenance of the maternity home for a lawful purpose cannot be restrained; it not being shown that same, conducted in a lawful manner, will be a nuisance. The maintenance of a maternity home is a legitimate business; therefore a writ of injunction should not be granted because appellees apprehend that same might become a nuisance through the conduct of said home in violation of the provisions of the law directing the way in which same shall be conducted. This would be granting the relief sought upon the assumption that the home will be conducted in an unlawful manner, when the presumption is to the contrary, that same will be conducted in accordance with the requirements of law, to wit, in a proper manner. 29 Cyc. 1222; Haynes v. Hedrick (Tex. Civ. App.) 223 S. W. 550.

[12] Tested by the provisions of this wholesome rule, the allegations above referred to are barren of any grounds for equitable relief, and contribute nothing to the positive allegations of fact contained in the petition. The operation of a maternity home for the care of those approaching motherhood has never been, and, we venture to say, will never be, held to be within itself immoral, and that, regardless of the acts and conduct of the parties responsible for the new life about to be ushered into existence. It is not the inception of the condition making necessary a maternity home to which the law looks in determining the needs and necessity of society for such an institution, but that higher law which finds its genesis in administering in the interest of humanity to relieve the suffering, care for the needy, and succor the weak in the hour of distress, sorrow, and misfortune. While not condoning any act in violation of the law of God or man for the. protection of society and the preservation of the highest moral influence and environments, yet it does not condemn as an outcast those who are made to suffer most for the sins of mankind—women. While condemning on the one hand the immoral act that brings into existence an illegitimate child, yet, in the interest of humanity, the law representing organized society extends its aid and assistance to the conditions thus presented with the purpose of relieving erring humanity, furnish an asylum for the time being to the unfortunate mother and helpless babe, that perchance the mother may be reclaimed and the child saved to noble walks of life. This spirit of the law finds a beautiful foundation in the sentiment:

> "Teach me to feel another's woe,
>    To hide the faults I see,
> That mercy I to others show,
>    That mercy show to me."

When organized society becomes so esthetic in its taste that it feels called upon to withdraw its protection and care from the erring and suffering motherhood of this country, then can it be said that the gospel of mercy taught by Him who never sinned has lost its power to operate in the interest of that element of society that need most the restraining influence of the gospel of the Lord Jesus Christ. Where will they go? Shall the fears of Hagar be realized by such unfortunates and they become wanderers upon the face of the earth? It is to be deeply deplored that such a condition ever has occasion to exist, but the fault lies within the human family, who alone can correct it, and who must answer for its evil effect, and society must endure and contend with the evil until corrected within its own ranks. How and when this remedy will be applied and the evil eradicated, the citizenship of the country alone can answer.

The giving of birth to a child is not within itself an immoral act, nor is the rendering of aid and assistance through the humanitarian agency of a maternity home to a woman in this hour of extremity to be so classed. If so, the whole order of things attending such events as devised by God Almighty rests in immorality, and therefore should be suppressed except in places isolated from mankind. However, the policy of the state in reference to this matter has been declared through its law-making power and, until

changed, will have to be observed and followed.

The appellees' bill being subject to a general demurrer, the trial court erred in overruling appellants' motion to quash the temporary writ of injunction granted thereon. Therefore the judgment and order of the trial court in this respect is reversed, and judgment here entered sustaining said motion dissolving said writ of injunction, and the cause remanded for such further proceedings as may be available to appellees, agreeable with the principles of equity and the rules of law applicable to proceedings of this character.

Reversed and remanded.